IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**TRENDIA HUDSON**                                                                                          **PLAINTIFF**

**v.**                                                         **No.**   4:26-cv-20-DMB-JMV

**MISSISSIPPI DEPARTMENT OF CORRECTIONS,**           **DEFENDANTS**
**JOHN HUNT, & DERRICK CHAMBERS**                 **(JURY TRIAL DEMANDED)**

## COMPLAINT

Immediately after Hudson settled her race discrimination lawsuit against MDOC, her bosses began giving her more onerous assignments and hinting that she should leave. This culminated in her demotion from Assistant Director down to night-shift Warden - a position her bosses knew Hudson could not perform while caring for her ailing father at night. The purpose was to force Hudson into retirement in retaliation for her exercising her protected rights. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

PARTIES

1. Plaintiff Trendia Hudson is Black and an adult resident of Mississippi.

2. Defendant Mississippi Department of Corrections is Hudson's former employer. This defendant can be served with process via the Attorney General of Mississippi at 550 High Street, Jackson, MS 39201.

3. Defendant MDOC is subject to Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e *et seq.* The only claim against MDOC in this action is under Title VII.

4. During Plaintiff's time working for MDOC, Plaintiff was protected by Title VII.

5. Defendant MDOC has more than 500 employees.

1

6. Defendant John Hunt is the Deputy Commissioner of Institutions of MDOC, and was in the supervisory chain of command over Hudson.

7. Defendant Derrick Chambers is the Director of Private/Regional Prisons of MDOC, and was in the supervisory chain of command over Hudson.

8. Defendants Hunt and Chambers jointly and/or singly made the employment decision(s) described below. In so doing, they were persons acting under color of state law. They are sued in their individual capacities. The only claims against Hunt and Chambers in this action are under 42 USC 1983, applying the Civil Rights Act of 1866 (42 USC 1981).

JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

9. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, including Title VII and 42 U.S.C. §§ 1983 and 1981.

10. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because the work at issue was located in and around Leflore County, Mississippi.

11. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.

12. This charge was filed on November 17, 2025.

13. This is within 180 days of the alleged employment actions challenged in this lawsuit.

14. The charge alleged retaliation resulting in constructive discharge.

15. The charge raised the same issues which are the subject of this Complaint.

16. The EEOC issued a notice of right to sue to the Plaintiff on November 19, 2025.

17. Plaintiff brings this action within 90 days of receipt of that right-to-sue notice.

18. Plaintiff has met the timeliness and administrative exhaustion requirements of Title VII.

19. Plaintiff demands a trial by jury on all issues so triable.

## FACTS

**Background**

20. Hudson was hired by MDOC on April 1, 1998 as a front-line corrections officer.

21. During her career she received many accolades and promotions.

22. These include the "Extra Effort Award" for exceptional performance, multiple "Outstanding" performance appraisals, selection as MDOC's Correctional Officer of the Month, and multiple Commendations for perfect attendance.

23. By the beginning of 2023, she had risen to the rank of Correctional Program Manager III.

24. At this time, she also had no history of any employment discipline in her record at MDOC.

25. In 2023, she applied for promotion to Warden/Deputy Superintendent.

26. She was referred for interviews.

27. All of the interviewees were Black.

28. Hudson was not selected for the promotion.

29. None of the Black interviewees were selected for the promotion.

30. Instead, a White person outside this original pool was identified and promoted.

**Protected activity**

31. Hudson believed her non-promotion to Warden was race discrimination.

32. She filed an EEOC charge and subsequent lawsuit in federal court (S.D. Miss., 3:24-cv-00301-DPJ-ASH) concerning this failure to promote.

33. When the State AG investigated the claims, they realized they had a problem and that Hudson should have been promoted.

34. Hudson was promoted to Warden/Deputy Superintendent in the Central Office, effective July 16, 2024.

35. She was informed that she "will retain your current state service status and state hire date."

36. She continued to perform well after her promotion to Deputy Superintendent.

37. She was promoted again to Assistant Director of Private and Regional Prisons.

38. Things seemed to be going well, and her unlawful non-promotion in the past.

39. The delay in her promotion from March 2023 until July 2024 had cost her approximately $12,000.

40. When the State AG offered to settle for $20,000, Hudson accepted.

**Retaliation begins**

41. The settlement was fully executed on December 18, 2024.

42. However, though Hudson was not aware of it, her supervisors resented that she had brought these claims against MDOC, and were plotting to end her career.

43. In January 2025, Chambers began pressuring Hudson to leave.

44. Chambers told her "you should take another position. Go work in the records department."

45. Also in January 2025, Hunt and Chambers called Hudson into the office and required her to sign a new employment arrangement.

46. This differed from the employment arrangement of other Assistant Directors, or others in the Private and Regional Prisons Department.

4

47. On or about March 11, 2025, Chambers issued a memorandum entitled "Expectations and Directives" which changed the facilities Hudson was to oversee and added new specific travel and reporting requirements.

48. The purpose was to persuade her to leave or retire.

49. Hudson did not leave or retire at that time.

**Demotion and constructive discharge**

50. However, Chambers and Hunt learned that Hudson had an ailing parent who she was caring for at night.

51. For this reason, they knew that if they moved her out of the area and, particularly if they put her on night shift, she would have no choice but to leave MDOC.

52. Hunt and Chambers decided to move Hudson to the Delta Correctional Facility in Leflore County, Mississippi.

53. They also decided to take away all her Assistant Regional Director duties.

54. They required her to work the night shift as a warden at the facility.

55. Their purpose was to force her to resign or retire in retaliation for her prior discrimination claims against the Agency.

56. On June 12, 2025, in a letter signed by Hunt, Hudson was reassigned "effective as of June 16, 2025" to "report to Delta Correctional Facility under the supervision of Superintendent Sequcia Wren."

57. The letter claimed this was not disciplinary, but "based on current operational needs and in accordance with agency discretion and staffing requirements."

58. The letter stated "As a result of this reassignment, your duties in the role of Assistant Regional Director will be discontinued."

5

59. The stated that the change "does not affect your original hire date, current non-state service status, job classification, or employee benefits. Your salary will remain the same."

60. Hudson reported as assigned to the Delta Correctional Facility.

61. She again informed her supervisors that she could not work night shift, and needed to be with her father to care for him.

62. She told them she would have to retire if they could not change the assignment.

63. Defendants preferred that Hudson leave the job rather than change the assignment.

64. Indeed, that was the purpose of the assignment.

65. Hudson retired effective June 30, 2025.

66. But for her lawsuit and settlement, Hudson would not have been subject to the January employment arrangement, the March expectations memo, or the June reassignment.

67. But for these actions, Hudson would not have had to retire and would still be working for MDOC.

**Hudson's replacement**

68. On or about July 2025, MDOC hired a new Assistant Superintendent in Hudson's place.

69. This was Manisa Ragsdale.

70. Ragsdale had no history of suing MDOC for race discrimination.

71. Ragsdale was not required to do Warden duties at Delta Correctional Facility on the night shift.

72. Ragsdale was not required to travel to Wilkinson, visit the facilities, or perform the special reporting duties assigned to Hudson in the March 11, 2025, "expectations" letter.

73. Ragsdale did not sign an employment arrangement like that given to Hudson in January 2025.

6

**Damages**

74. At the time his employment ended, Hudson's expected annual salary was $65,000 per year.

75. The expensed value of Hudson's benefits are currently estimated, on information and belief, at a rate of $35,000 per year.

76. Hudson suffered severe emotional distress as a result of the retaliation and unravelling of a 28-year career.

77. Over and above any emotional or physical harm, Hudson also suffered dignitary harms in being required to undergo retaliation for exercising her rights to be free from discrimination at work.

78. Hunt and Chambers have received training from MDOC concerning discrimination and retaliation.

79. Hunt and Chambers were aware, as of January 2025, that it is unlawful to retaliate against an employee for filing and settling a race discrimination lawsuit against MDOC.

CAUSES OF ACTION

COUNT I: CIVIL RIGHTS ACT OF 1964, RETALIATION (MDOC only)

80. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

81. Under Title VII, it is unlawful retaliation to take adverse action because a person participates in the enforcement process, including by filing a charge, filing a lawsuit, and entering a settlement.

82. Plaintiff engaged in protected activity by filing a charge, filing a lawsuit, and entering a settlement.

83. Defendant MDOC took adverse action against Plaintiff because of these protected activities.

84. The constructive discharge in this case was in retaliation for these protected activities.

85. The entire course of conduct was sufficiently adverse to deter a reasonable person from protected activity.

86. This violates the law.

87. In doing so, Defendant harmed Plaintiff.

COUNT II: CIVIL RIGHTS ACT OF 1866, RETALIATION (Hunt & Chambers only)

88. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

89. Under the Civil Rights Act of 1866 (42 USC 1981) - as enforced against any person acting under color of state law under 42 USC 1983 - it is unlawful retaliation to take adverse action because a person participates in the enforcement process, including by filing a charge, filing a lawsuit, and entering a settlement.

90. Plaintiff engaged in protected activity by filing a charge, filing a lawsuit, and entering a settlement.

91. Defendants Hunt and/or Chambers took adverse action against Plaintiff because of these protected activities.

92. The constructive discharge in this case was in retaliation for these protected activities.

93. The entire course of conduct was sufficiently adverse to deter a reasonable person from protected activity.

94. This violates the law.

95. In doing so, Defendants harmed Plaintiff.

## REMEDIES

96. Plaintiff seeks all remedies available, including but not limited to the following:

   a. A final judgment declaring that Defendant has violated the law;

   b. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

   c. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

   d. Any other equitable relief as this honorable Court deems appropriate;

   e. Back pay;

   f. Statutory liquidated damages if applicable;

   g. Reinstatement and/or front pay, as appropriate;

   h. Compensatory damages for dignitary harms, reputational harms, emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

   i. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

   j. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

   k. Nominal damages if no other damages are available;

   l. Pre- and post-judgment interest;

   m. Attorney fees;

   n. Costs; and/or,

o. Any other relief available under any applicable principle of law or equity.

DATE: February 13, 2026.

                                        Respectfully submitted,

                                        TRENDIA HUDSON, Plaintiff

                                        By: _/s/ Joel F. Dillard (MSB No. 104202)_
                                                Joel F. Dillard
                                                775 North Congress Street
                                                Jackson, Mississippi 39202
                                                (601) 509-1372 x2
                                                joel.f.dillard@gmail.com